```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
MICHAEL TAINO, individually and on                         :
behalf of those similarly situated,                        :
                                                           :
                             Plaintiff,                    :    23-CV-5371 (VSB)
                                                           :
              - against -                                  :    OPINION & ORDER
                                                           :
                                                           :
                                                           :
BOW TIE CINEMAS, LLC,                                      :
                                                           :
                             Defendant.                    :
                                                           :
-----------------------------------------------------------X
```

Appearances:

Zachary M. Vaughan
Berger Montague PC
Washington, DC

Sophia M. Rios
Berger Montague PC
San Diego, California

Sherrie R. Savett
Barbara A. Podell
Lane L. Vines
Berger Montague PC
Philadelphia, Pennsylvania
*Counsel for Plaintiff*

Christopher A. Rojao
Edward Fanning, Jr.
McCarter & English, LLP
New York, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

  Before me is the motion of Defendant Bow Tie Cinemas, LLC ("Bow Tie" or

"Defendant") to dismiss the complaint ("Complaint") filed by Plaintiff Michael Taino ("Taino"

or "Plaintiff"). (Doc. 16.) Bow Tie also moves to compel arbitration and stay proceedings pending the completion of the arbitration. (Doc. 14.) For the reasons below, Defendant's motion to compel arbitration is DENIED and Defendant's motion to dismiss is GRANTED.

## I.  Factual Background[1]

Bow Tie, one of North America's oldest movie theater chains, owns and operates a website, accessible at www.bowtiecinemas.com and www.btmcinemas.com (the "Bow Tie Website") where consumers can view trailers, scan for showtimes, and buy movie tickets. (Doc. 1 ("Compl.") ¶¶ 2–3.) Bow Tie has a loyalty rewards program—the Criterion Club—in which enrolled members earn reward points for box office and concession purchases. (Connelly Decl. ¶ 2.) Plaintiff enrolled in the Criterion Club on June 3, 2021. (*Id.* ¶ 3.) Before activating his or her account, a prospective member must agree to the Criterion Club Terms and Conditions. (*Id.* ¶ 9.) The words "Terms and Conditions" are underlined, depicting a hyperlink:

---

[1] The following facts are drawn from the allegations set forth in Plaintiff's Class Action Complaint, (the "Complaint"). "On a motion to compel arbitration, the Court accepts as true the allegations in the complaint that relate to the underlying dispute between the parties." *In re Document Techs. Litig.*, No. 17-CV-2405, 2017 WL 2840280, at *1 (S.D.N.Y. Apr. 27, 2017) (citing *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012)). My reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings. This Opinion & Order also draws from the Declaration of John Connelly in support of the motion to compel arbitration, (Doc. 15-1 ("Connelly Decl.")), and the exhibits attached thereto, (Docs. 15-2–9), and the Declaration of Sophia Rios in opposition to the motion, (Doc. 21 ("Rios Decl.")). Because motions to compel arbitration are evaluated under a standard "'similar to that applicable [to] a motion for summary judgment,'" courts are permitted to consider "materials outside the complaint" in evaluating such motions. *Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 247 (E.D.N.Y. 2016) (quoting *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). The facts set forth in this section are uncontested unless otherwise noted.

In analyzing the motion to dismiss, however, I rely only on the allegations set forth in the Complaint. (Doc. 1.) I assume the allegations in the Complaint to be true in considering the motion to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

(Doc. 15-6 at 3.)

Paragraph nine of the Criterion Club Terms and Conditions includes the following clause: "Arbitration: You agree that any dispute, claim, or controversy arising out of the Terms and Conditions shall be determined by binding arbitration in the state of New York. An award of arbitration may be confirmed in a court of competent jurisdiction." (Doc. 15-7 ¶ 9.) In addition, paragraph five of the Criterion Club Terms and Conditions states the following:

> Bow Tie Cinemas collects personally identifiable information, such as your name, email address, phone number, and physical address, and handles this information in accordance with its Privacy Policy. Our Privacy Policy is hereby incorporated by reference and can be found at www.bowtiecinemas.com/criterion-club/privacy-policy.

(*Id.* ¶ 5; Connelly Decl. ¶ 11.) Crucially, however, clicking the hyperlink, as it existed in June 2021, would direct to a webpage that stated, "404 PAGE NOT FOUND," instead of the Criterion Club Privacy Policy. (Rios Decl. ¶¶ 5–6.)

The bottom of the webpage containing the Criterion Club Terms and Conditions, as it

3

existed in June 2021, contained two other hyperlinks related to privacy policies. (Rios Decl. ¶ 10.) The first hyperlink, at the bottom-center of the webpage, is labeled "Privacy Policy." (*Id.*) The second hyperlink displayed, at the bottom-right of the webpage beneath the header "Criterion Club", is labeled "Privacy Policy – Criterion Club." (*Id.*)



(*Id.* (arrows added for emphasis).)

As it existed on June 23, 2021, the first hyperlink directed a prospective member to an agreement titled "PRIVACY POLICY." (Rios Decl. ¶ 12.) As it existed on June 23, 2021, the second hyperlink directed a prospective member to an agreement titled "PRIVACY POLICY – CRITERION CLUB." (*Id.* ¶ 13; *see also* Doc. 15-8 ("Criterion Club Privacy Policy").) The agreement found in the first hyperlink, "Privacy Policy," is not the same as the agreement found in the second hyperlink, "Privacy Policy – Criterion Club." (*See* Doc. 21 ¶ 12; *see also* Doc. 20 at 9 ("[B]ut that agreement is not the agreement that Defendant contends was incorporated by reference[.]").) Relevant here, the Criterion Club Privacy Policy informed prospective members

regarding the third-party use of cookies and other tracking technologies, such as the use of web beacons and pixels on its website. (Criterion Club Privacy Policy 2.)

On June 27, 2021, Plaintiff accessed the Bow Tie Website and bought a movie ticket. (Compl. ¶ 46.) At the time Plaintiff purchased his movie ticket on the Bow Tie Website, he was also logged into his Facebook account on the same electronic device. (*Id*. ¶ 47.) When a user uses an Internet browser to log into Facebook, Facebook places several "cookies"—pieces of code placed on a browser by a server that receives and stores information—on the user's browser. (*Id.* ¶¶ 23–24.) One of the cookies that Facebook placed on a user's browser upon login is the "c_user" cookie, which contains the user's Facebook ID number ("FID") and remains on a user's browser as long as they do not log out of Facebook. (*Id*. ¶ 25.) The c_user cookie allows Facebook to identify users when they visit Facebook and track the user's activity across the Internet on the same browser. (*Id*. ¶ 26.) The FID relates to a specific person, unlike, for example, an IP address. (*Id*.) This enables Facebook to match up a user's activity across multiple devices and multiple browsers. (*Id*. ¶¶ 26–27.) Facebook is then able to collect enormous amounts of data and to generate billions of dollars in advertising revenue. (*Id*. ¶ 27.)

Businesses—such as Bow Tie—install the Facebook "pixel" or "web beacon" on their websites. (Compl. ¶¶ 28–29.) When a user visits a website containing the Facebook pixel, the pixel "is programmed to contact the Facebook ad server." (*Id*. ¶ 29.) Because Facebook can identify the Facebook users visiting these websites when the user has an active c_user cookie on their browser, Facebook pixels enable businesses to target advertisements to specific users. (*Id*. ¶¶ 30–32.)

5

Plaintiff alleges that when he purchased his movie ticket, "Bow Tie shared with Facebook the name of the movie for which Plaintiff purchased a ticket, along with Plaintiff's Facebook ID." (Compl. ¶ 48.) Specifically, Plaintiff claims that computer code, like the one below, is sent to Facebook when a user is logged in to Facebook and uses Bow Tie's website:

```
URL
+ https://www.facebook.com/tr/?id=1937621914216466&ev=SubscribedButtonClick&d
  l=https%3A%2F%2Fwww.bowtiecinemas.com%2Fmovie%2F309782%2FVenom-Let-There-Be-
  Carnage-Trailer-and-Info&rl=https%3A%2F%2Fwww.bowtiecinemas.com%2F&if=false
  &ts=1638264057535&cd[buttonFeatures]=%7B%22classList%22%3A%22btn%20o-btn%20o-
  btn--small%22%2C%22destination%22%3A%22%2C%22id%22%3A%22%2C%22imageUr
  l%22%3A%22%2C%22innerText%22%3A%22CONTINUE%20CHECKOUT%22%2C%22numChildBut
  tons%22%3A0%2C%22tag%22%3A%22button%22%2C%22name%22%3A%22%2C%22value%22%3
  A%22%22%7D&cd[buttonText]=CONTINUE%20CHECKOUT&cd[formFeatures]=%5B%5D&cd[pag
  eFeatures]=%7B%22title%22%3A%22Venom%3A%20Let%20There%20Be%20Carnage%20%7C%2
  0Bow%20Tie%20Cinemas%22%7D&cd[parameters]=%5B%5D&sw=1536&sh=864&v=2.9.48&r=s
  table&ec=4&o=30&fbp=fb.1.1638263733686.1378033305&it=1638263748850&coo=false
  &es=automatic&tm=3&rqm=GET

HEADERS
+ accept:            image/avif,image/webp,image/apng,image/svg+xml,image/*
                     ,*/*;q=0.8
+ accept-encoding:   gzip, deflate, br
+ accept-language:   en-US,en;q=0.9
+ connection:        keep-alive
+ cookie:            sb=19uLYbJ3KXZJ3WqVZz0gdZWo;
                     datr=1OuLYWAM[redacted]uocOBjZUf01; dpr=1.25;
                     c_user=[redacted]
                     spin=r.1004775812_b.trunk_t.1638259693_s.1_v.2_;
                     xs=49%3AYvE016YkzZBx9w%3A2%3A1638259688%3A-
                     1%3A15160%3A%3AAcUXE8QDHo3tO3GFb1VXuAJvvSCOl_iu6AXyopu
                     5Ag;
                     fr=04bEgOvr9Ty9SUP8M.AWXPXxEleOgdSSIlkApt3cVQFQQ.Bhpet
                     R.Ci.AAA.0.0.BhpetR.AWVhmAh8Xt4
```

(*Id.* ¶ 39 (red boxes and redaction in original).)

II.   **Procedural History**

Plaintiff filed his class action complaint against Bow Tie on June 23, 2023. (*See* Compl.) The Complaint alleges that Defendant, as a video tape service provider, disclosed consumers' personally identifiable information ("PII") to Facebook in violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, *et seq.* (*Id.* ¶ 6.)

On September 25, 2023, Defendant filed a motion to compel Plaintiff to arbitrate his claims on an individual basis, (Doc. 14), and an accompanying memorandum of law, (Doc. 15 ("MTC Mem."), and declaration, (Doc. 15-1). That same day, Defendant also filed a motion to

6

dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), (Doc. 16), and an accompanying memorandum of law, (Doc. 17 ("MTD Mem.")).  On November 9, 2023, Plaintiff filed his opposition to the motion to compel arbitration, (Doc. 20 ("MTC Opp'n")), as well as an accompanying declaration, (Doc. 21).  On the same day, Plaintiff also filed his opposition to the motion to dismiss.  (Doc. 22 ("MTD Opp'n").)  On December 11, 2023, Defendant filed reply briefs to both the motion to compel arbitration, (Doc. 27 ("MTC Reply")), and motion to dismiss, (Doc. 28 ("MTD Reply")).  Defendant filed notices of supplemental authority in support of its motion to dismiss on March 26 and September 11, 2024.  (Docs. 29, 30.)  After obtaining leave to do so, Plaintiff filed a sur-reply in opposition to the motion to dismiss on September 27, 2024.  (Doc. 34.)  On October 4, 2024, Defendant filed a response to Plaintiff's sur-reply.  (Doc. 35.)  The parties then filed notices of supplemental authority, or responses to such notices on April 2, April 8, May 9, and July 1, 2025.  (Docs. 36–39.)

### III. Legal Standard

#### A. *Motion to Compel Arbitration*

Upon the motion of either party to the agreement, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, requires courts to compel arbitration in accordance with the terms of an arbitration agreement provided that there is no issue regarding its creation.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing 9 U.S.C. § 2).  "[A] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.  A court must therefore first determine:  "(1) whether the parties entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement."

*In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (citations omitted); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) ("[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue.").

 Courts must evaluate a motion to compel arbitration pursuant to the FAA under a standard similar to the standard for a summary judgment motion. *See Bensadoun*, 316 F.3d at 175. "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Id.* at 175 (citing 9 U.S.C. § 4). However, the "party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010); *accord Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 342–43 (S.D.N.Y. 2014) ("Whether it argues that arbitration is improper because the arbitration agreement is invalid under a defense to contract formation, or asserts that the arbitration contract does not encompass the claims at issue, either way, the resisting party shoulders the burden of proving its defense." (internal quotation marks omitted)). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

 "[D]espite the strong federal policy favoring arbitration, arbitration remains a creature of contract." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019). Accordingly, "though the presumption in favor of arbitration is strong, the law still requires that parties actually agree to arbitration before it will order them to arbitrate a dispute." *Opals on Ice Lingerie v. Bodylines*

*Inc.*, 320 F.3d 362, 369 (2d Cir. 2003). "[T]he ultimate question of whether the parties agreed to arbitrate is determined by state law." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002).

Under New York law, the party seeking arbitration bears the burden of proving that a valid arbitration agreement exists, *Am. Centennial Ins. Co. v. Williams*, 649 N.Y.S.2d 190, 191 (2d Dep't 1996), but need only prove the existence of a valid arbitration agreement by a preponderance of the evidence, *see Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venez.*, 991 F.2d 42, 46 (2d Cir. 1993); *see also Torres v. Major Auto. Grp.*, No. 13-CV-0687, 2014 WL 4802985, at *5 (E.D.N.Y. Sept. 25, 2014) (recognizing that despite a requirement of "express, unequivocal agreement" between the parties to an arbitration agreement under New York law, "the Second Circuit has applied the 'ordinary' preponderance of the evidence standard in determining whether parties whose agreements are governed by New York law have agreed to arbitrate" (quoting *Progressive*, 991 F.2d at 46)).

### B. *Rule 12(b)(6) Motion to Dismiss*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237 (2d Cir. 2007). A complaint need not make "detailed factual

9

allegations," but it must contain more than mere "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Indeed, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

## IV. Discussion

### A. *Arbitrability of the Dispute*

The parties agree that New York law governs the interpretation of whether a valid arbitration agreement exists between them, and Plaintiff does not dispute that he agreed to the Criterion Club Terms and Conditions, which included an arbitration clause. (*See* MTC Opp'n. 1, 3 (characterizing the Criterion Club Terms and Conditions as "the agreement Plaintiff agreed to"); Doc. 15-7 ¶ 9 ("You agree that any dispute, claim, or controversy arising out of the Terms and Conditions shall be determined by binding arbitration . . .").) Although Bow Tie does not claim that Plaintiff's VPPA claim arises from the Criterion Club Terms and Conditions alone, it argues that Plaintiff's claim is nonetheless within the scope of the arbitration agreement because the Criterion Club Terms and Conditions incorporate by reference a separate policy—the Criterion Club Privacy Policy—which Bow Tie argues "informed Plaintiff of the possible use of third-party cookies and pixels on its website." (MTC Mem. 1.) Thus, because there is no question that the parties entered into an agreement to arbitrate; the only question I must decide is whether the parties' dispute falls within the scope of the arbitration agreement set forth in paragraph nine of the Criterion Club Terms and Conditions.

In arguing that his VPPA claim is outside the scope of the parties' agreement to arbitrate, Plaintiff first argues that he never assented to the Privacy Policy's terms because the Criterion Club Privacy Policy was not incorporated by reference in the Criterion Club Terms and Conditions. (MTC Opp'n 8–11.) I address this argument first.

Paragraph five of the Criterion Club Terms and Conditions states the following:

> Bow Tie Cinemas collects personally identifiable information, such as your name, email address, phone number, and physical address, and handles this information in accordance with its Privacy Policy. Our Privacy Policy is hereby incorporated by reference and can be found at www.bowtiecinemas.com/criterion-club/privacy-policy.

(Doc. 15-7 ¶ 5.) Plaintiff relies principally on the undisputed fact that the hyperlink that purportedly directed Plaintiff to the Criterion Club Privacy Policy was broken. (*See* MTC Opp'n 9; MTC Reply 5 n.1 (conceding that paragraph five's hyperlink includes a "slash" between "criterion club" and "privacy policy," whereas the correct link has a "dash" between "criterion club" and "privacy policy.").) In addition to acknowledging the broken hyperlink, Bow Tie does not dispute Plaintiff's assertion that he never read the Criterion Club Privacy Policy. Instead, Bow Tie argues that an objectively reasonable person would have understood that the Criterion Club Terms and Conditions incorporated the Criterion Club Privacy Policy by reference because that policy was "clearly identified and available." (MTC Reply 5–6.)

### a. Applicable Law

"Under New York law, it is well established that contract terms and other agreements may be incorporated by cross-reference." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 104 (2d Cir. 2022). "To determine whether a contract has incorporated a document by reference, courts look to whether a reasonable person would understand the specific document to be incorporated by reference, in other words, an objective standard." *Miller v. Mercuria Energy*

11

*Trading, Inc.*, 291 F. Supp. 3d 509, 517 (S.D.N.Y. 2018) (citing *Progressive*, 991 F.2d at 47), *aff'd*, 774 F. App'x 714 (2d Cir. 2019).  In making this determination, courts generally consider two factors:  "(1) whether the allegedly incorporated document is expressly identified and so referred to and described in the instrument that the paper may be identified beyond all reasonable doubt[2] and (2) whether the language incorporating the document clearly communicates that the purpose of the reference is to incorporate the referenced material into the contract."  *Volt Elec. NYC Corp. v. A.M.E., Inc.*, 586 F. Supp. 3d 262, 279 (S.D.N.Y. 2022) (citation modified and internal quotation marks omitted).  The Second Circuit has made clear that arbitration clauses that were incorporated by reference can be binding on parties.  *Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 282 F.3d 92, 97 (2d Cir. 2002) ("Indeed, we have specifically found that parties were bound to arbitrate under arbitration clauses they never signed, where those clauses were contained in other documents that were incorporated by reference.").

b. Application

I find that the Criterion Club Terms and Conditions do not incorporate by reference the Criterion Club Privacy Policy by the requisite New York standard of "beyond all reasonable doubt."  As an initial matter, paragraph five is plainly sufficient to "clearly communicate[] that

---

[2] As discussed *supra*, the Second Circuit has held that Section 2 of the FAA preempts the standard of proof under New York law in evaluating whether parties have agreed to arbitrate, such that the "ordinary" preponderance of the evidence standard governs.  *See Progressive*, 991 F.2d at 46.  Although Bow Tie need only prove the existence of the parties' agreement to arbitrate by a preponderance of the evidence under *Progressive*, under New York law, it would have to establish that the referencing document—the Criterion Club Terms and Conditions—identifies the incorporated document—the Criterion Club Privacy Policy—beyond all reasonable doubt.  *See Volt*, 586 F. Supp. 3d at 279 (internal quotation marks omitted).  "This outcome is obviously in tension with the law regarding burden-of-proof requirements in civil actions."  *Torres*, 2014 WL 4802985, at *7 n.10 (citations omitted).  However, I need not resolve this dispute because both parties agree that the applicable standard here should be the New York standard of "beyond all reasonable doubt."  (*Compare* MTC Opp'n 1, *with* MTC Reply 2–3.)  *See Valdez-Mendoza v. Jovani Fashion Ltd.*, No. 15-CV-7261, 2017 WL 519230, at *2 n.1 (E.D.N.Y. Feb. 8, 2017) (applying New York law because "Plaintiffs allege violations of New York labor law and the Defendants cite New York law in their papers").  For the purposes of this Opinion & Order, I therefore apply the New York standard of "beyond all reasonable doubt."

12

the purpose of the reference is to incorporate" some privacy policy, *Volt*, 586 F. Supp. 3d at 279 (internal quotation marks omitted), as it states, "[o]ur Privacy Policy is hereby incorporated by reference and can be found at http://www.bowtiecinemas.com/criterion-club/privacy-policy," (Doc. 15-7 ¶ 5).

However, the reference to "[o]ur Privacy Policy" cannot be said to refer to the Criterion Club Privacy Policy "beyond all reasonable doubt."  Under New York law, "[t]he doctrine of incorporation by reference requires that the paper to be incorporated into a written instrument by reference, must be so referred to and described in the instrument that the paper may be identified beyond all reasonable doubt." *Chiacchia v. Nat'l Westminster Bank USA*, 507 N.Y.S.2d 888, 889–90 (2d Dep't 1986) (citing *In re Bd. of Comm'rs of Washington Park*, 52 N.Y. 131, 134 (N.Y. 1873)).  This requirement "is grounded on the premise that the material to be incorporated is so well known to the contracting parties that a mere reference to it is sufficient." *Id.* at 890.  Indeed, this is an "exacting standard." *Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 163 (S.D.N.Y. 2014) (quoting *Shark Info. Servs. Corp. v. Crum & Forster Com. Ins.*, 634 N.Y.S.2d 700, 701 (1st Dep't 1995)).

First, it is undisputed that the hyperlink was broken and invalid.  (*See* MTC Opp'n 8–9; MTC Reply 5 n.1 (conceding that paragraph five's hyperlink includes a "slash" between "criterion club" and "privacy policy," whereas the correct link has a "dash" between "criterion club" and "privacy policy.").)  Therefore, Plaintiff could not use the hyperlink to access the Criterion Club Privacy Policy, which was purportedly incorporated by reference.  Clicking the hyperlink in paragraph five directed to a webpage that stated the page could not be found.  At this point, assuming Plaintiff did not interpret the webpage as meaning the Criterion Club Privacy Policy did not exist, the Plaintiff would have to engage in a search for the Criterion Club

13

Privacy Policy. On these facts alone, I find that Bow Tie failed to establish that the Criterion Club Privacy Policy is incorporated by reference beyond all reasonable doubt.

Next, Bow Tie argues that a hyperlink to "Privacy Policy – Criterion Club"—located at the bottom of the Bow Tie Website—clearly identifies the referenced policy. Bow Tie's argument would have been dispositive if it were the only hyperlink to a privacy policy. *See Progressive*, 991 F.2d at 47 n.8 (finding incorporation by reference where there was a "specific reference to a single document directly identified by name"); *see also Volt*, 586 F. Supp. 3d at 279 ("[T]here is no other document potentially incorporated by reference that bears such clear language."); *Laureate Educ., Inc. v. Ins. Co. of the State of Pa.*, No. 11-CV-7175, 2014 WL 1345888, at *7 (S.D.N.Y. Mar. 31, 2014) (finding that a statement of values was incorporated by reference where "[t]here are not multiple statements of values to which the parties may be referring" and there was "no competing reference at issue"). Here, however, there were two privacy policy hyperlinks, both at the bottom of the relevant page. Indeed, the other one states, "Privacy Policy." The text of the Terms and Conditions is also ambiguous since it merely references "[o]ur Privacy Policy," and does not help differentiate between "Privacy Policy" and "Privacy Policy – Criterion Club."[3] A reference to potentially more than one document is not sufficient to meet the high standard of incorporation by reference. *See, e.g., Ward*, 3 F. Supp. 3d at 163 (finding that website's "vague allusion to general classes of documents" did not incorporate those documents); *Jensen v. Cablevision Sys. Corp.*, No. 17-CV-00100, 2017 WL 4325829, at *2 (E.D.N.Y. Sept. 27, 2017) (finding online terms of service not to be incorporated where reference was to a "litany of terms and conditions"). Here, the reference to a "Privacy

---

[3] Moreover, "a court should construe ambiguous language against the interest of the party who drafted it." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) (interpreting arbitration clause). Defendant likely drafted the underlying agreement because Plaintiff's only options were to agree or not to agree with it.

14

Policy," when there are two privacy policies, cannot meet the "exacting standard" of incorporation by reference for a contract.  *Shark Info.*, 634 N.Y.S.2d at 701.

      Bow Tie finally argues that the specific privacy policy is identified by the URL itself, and that "[a]n objectively reasonable person would understand that the Criterion Club® Terms and Conditions incorporates the Privacy Policy bearing the same name."  (MTC Reply 3; *see also* Doc. 15-7 at 2 ("Our Privacy Policy is hereby incorporated by reference and can be found at http://www.bowtiecinemas.com/criterion-club/privacy-policy.").)  However, Bow Tie fails to cite to any case law suggesting that it is "beyond all reasonable doubt" that a person would reasonably read every word of the URL itself to identify what document is being referenced.  Nor can it.  Given the facts that the referenced hyperlink was broken and that there were two alternative Privacy Policies, I cannot find that the Criterion Club Privacy Policy was referenced "beyond all reasonable doubt."  Although there may be some indicia that the "Privacy Policy – Criterion Club" may be the relevant policy, I do not find those indicia sufficient to meet the "exacting standard" required for an incorporation by reference.  *See Shark Info.*, 634 N.Y.S.2d at 701.

      Defendant's motion to compel arbitration hinges on the Criterion Club Privacy Policy being incorporated by reference to the Terms and Conditions.  Because I do not find that the Criterion Club Privacy Policy was incorporated by reference beyond all reasonable doubt, Defendant's motion to compel arbitration is DENIED.  *See Forge Underwriting Ltd. v. AmTrust Fin. Servs., Inc.*, No. 23-CV-06201, 2023 WL 6890844, at *5–6 (S.D.N.Y. Oct. 19, 2023) (finding arbitration clause not binding where it was not incorporated by reference).

### B. *Motion to Dismiss*

The VPPA provides, in relevant part, that "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person." 18 U.S.C. § 2710(b)(1). "To state a claim under the VPPA, a plaintiff must plausibly allege that (1) a video tape service provider (2) knowingly disclosed to any person (3) personally identifiable information concerning her use of the service." *Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 44 (2d Cir. 2025) (citations omitted).

Defendant moves to dismiss this action under Federal Rule of Civil Procedure 12(b)(6) under the first and third elements of the VPPA. (*See* MTD Mem. 1–2.) First, Defendant contends that it is not a "video tape service provider" within the meaning of the VPPA. (*Id.*) Second, Defendant argues that the alleged disclosure of information does not constitute "personally identifiable information" within the meaning of the VPPA. (*Id.* at 2.) Because I find that the alleged disclosure here does not constitute PII under the VPPA, the Complaint is dismissed.

In *Solomon*, the Second Circuit joined the Third and Ninth Circuits in interpreting the VPPA to hold that "'personally identifiable information' encompasses information that would allow an ordinary person to identify a consumer's video-watching habits, but not information that only a sophisticated technology company could use to do so." *Solomon*, 136 F.4th at 52. The Second Circuit then applied this "ordinary person" standard to hold that the plaintiff in *Solomon* failed to allege that the disputed disclosure constituted PII under the VPPA because it was "some twenty-nine lines of computer code," which included a video title "interspersed with many characters, numbers, and letters." *Id.* at 54. The Circuit found that it was implausible that

16

an ordinary person would be able to interpret that language "with little or no extra effort," especially if certain highlighting added to the complaint were removed, to interpret it to be a video title. *Id.* The Second Circuit also found it implausible that "an ordinary person could identify [the plaintiff] through her FID" because it "would be just one phrase embedded in many other lines of code." *Id.* The Court noted that "if the numbers in the exemplar were not redacted, what an individual would see is, for example, a phrase such as 'c_user=123456' or 'c_user=00000000.'" *Id.* Notwithstanding the code including the phrase "www.facebook.com," the Court held that it was "not plausible that an ordinary person, without [a party's] annotation . . . would see the 'c_user' phrase on [the defendant's] servers and conclude that the phrase was a person's FID." *Id.* Finally, the Second Circuit emphasized that the complaint was "devoid of any details about *how* an ordinary person would use an FID to identify" the plaintiff. *Id.* (emphasis in original). The Second Circuit found insufficient the plaintiff's statement that "entering 'facebook.com/[plaintiff's FID]' into any web browser would result in [the plaintiff's] personal Facebook profile." *Id.* at 54–55.

*Solomon* is directly on point and the findings in the case are fatal to Plaintiff's VPPA cause of action. Plaintiff's allegations in his Complaint are essentially identical allegations to the allegations made by the plaintiff in *Solomon*—that Defendant sent Plaintiff's "Facebook ID and the name of the movie they were purchasing tickets for, in a single transmission, to Facebook." (Compl. ¶ 66.) Plaintiff's screenshot includes 12 lines of a long URL of numbers, symbols, and letters. (*Id.* ¶ 39.) Buried in that code is the phrase "Venom-Let-There-Be-Carnage-Trailer-and-Info&rl," which Plaintiff highlights using red boxes as including the name of the movie for which Plaintiff purchased tickets—Venom Let There Be Carnage. However, I find that it is implausible that an ordinary person would be able to interpret this code, without Plaintiff's

17

emphases with red boxes, "with little or no extra effort," to identify that this was a movie ticket Plaintiff purchased. *Solomon*, 136 F.4th at 54. Even the part of the code that supposedly includes the title of the movie is immediately followed by the phrase, "Trailer-and-Info&rl," which seems to refer to a movie trailer thus further making unclear what the code means. Nor is it plausible that an ordinary person would see the nine-line code of the cookie transmitted—which includes the "c_user" phrase—to cross reference it with the www.facebook.com in the URL section and "conclude that the phrase was a person's FID." *Id.* Finally, Plaintiff's claims that someone could perform "a Google search using the word 'Facebook' plus a given Facebook ID number" to identify the user's Facebook profile, (Compl. ¶ 22), is likewise insufficient to demonstrate that an ordinary person would know what to do with the c_user information to pinpoint an individual's identity. *Cf. Solomon*, 136 F.4th at 54–55 (concluding that FID would not be helpful in identifying an individual). In short, *Solomon* is fatal to Plaintiff's pixel-based claims under the VPPA. *See Hughes v. Nat'l Football League*, No. 24-2656, 2025 WL 1720295, at *2 (2d Cir. June 20, 2025) (summary order) ("*Solomon* effectively shut the door for Pixel-based VPPA claims."). Although Defendant filed notices of supplemental authority on May 9, 2025 regarding *Solomon*, (Doc. 38), and on July 1, 2025 regarding *Hughes*, (Doc. 39), Plaintiff failed to respond and has altogether failed to address either *Solomon* or *Hughes*.

Because Plaintiff fails to support the allegation that the long list of complicated code constitutes PII under the VPPA, Defendant's motion to dismiss is GRANTED.[4]

### C. *Leave to Amend*

In his opposition to the motion to dismiss, Plaintiff requests leave to amend. (MTD

---

[4] Because I dismiss the Complaint for failure to allege that PII was disclosed in violation of the VPPA, I need not address Defendant's other argument that Defendant was not a "video tape service provider" under the VPPA.

18

Opp'n 23–24). However, Plaintiff offers no details as to how amendment would cure the Complaint's deficiencies, nor does Plaintiff provide a copy of his proposed amendment. Courts have denied leave to amend where a plaintiff fails to indicate what amendments he intends to make to cure pleading deficiencies. *See Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) ("[D]enial of leave to amend is proper where the request gives no clue as to how the complaint's defects would be cured." (internal quotation marks omitted)); *Romero v. Napoli*, No. 08-CV-8380, 2013 WL 1479308, at *1 (S.D.N.Y. Apr. 1, 2013) (denying leave to amend where "movant fails to file a copy of the proposed amended pleading (or at least a detailed description of the proposed amendments)"). Plaintiff cites *Lamb v. Forbes Media LLC*, No. 22-CV-06319, 2023 WL 6318033 (S.D.N.Y. Sept. 28, 2023) for the proposition that "Courts have uniformly held that FIDs constitute PII under the VPPA." (MTD Opp'n 21.) However, *Lamb* predates *Solomon* and is of no help to Plaintiff. In *Lamb*, the Court granted leave to amend because "an amendment could fortify Plaintiffs' claim to have been subscribers under the VPPA." *Lamb*, 2023 WL 6318033, at *14. The Complaint here does not suffer from the same deficiency as in *Lamb*. Rather, Plaintiff fails to allege that PII was disclosed in violation of the VPPA. Plaintiff offers no explanation how any amendment would rescue his claims after *Solomon*, which "effectively shut the door for Pixel-based VPPA claims." *See Hughes*, 2025 WL 1720295, at *2; *see, e.g.*, *Nixon v. Pond5, Inc.*, No. 24-CV-05823, 2025 WL 2030303, at *5 (S.D.N.Y. July 21, 2025) (dismissing with prejudice similar claims under *Solomon* and *Hughes*); *Golden v. NBCUniversal Media, LLC*, No. 22-CV-9858, 2025 WL 2530689, at *7 (S.D.N.Y. Sept. 3, 2025) (same).

 Accordingly, Plaintiff's request for leave to amend the Complaint is DENIED.

## V.     Conclusion

For the foregoing reasons, Defendant's motion to compel arbitration is DENIED and Defendant's motion to dismiss is GRANTED.  Accordingly, Plaintiff's request to amend is DENIED and his claim is DISMISSED with prejudice.

The Clerk of Court is respectfully directed to terminate Document 14 and Document 16, and to close this case.

SO ORDERED.

Dated: September 16, 2025
       New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge